IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

PARKERSBURG DIVISION

CHRISTOPHER BAILEY,                )
                                   )
          Plaintiff,               )
                                   )
v.                                 )          CIVIL ACTION NO. 6:13-29150
                                   )
CAROLYN W. COLVIN ,                )
Acting Commissioner of Social Security,  )
                                   )
          Defendant.               )

PROPOSED FINDINGS AND RECOMMENDATION

This is an action seeking review of the final decision of the Commissioner of Social Security

denying the Plaintiff's application for Supplemental Security Income (SSI) under Title XVI of the

Social Security Act, 42 U.S.C. §§ 1381-1383f. By Standing Order entered December 1, 2013

(Document No. 4.), this case was referred to the undersigned United States Magistrate Judge to

consider the pleadings and evidence, and to submit Proposed Findings of Fact and Recommendation

for disposition, all pursuant to 28 U.S.C. § 636(b)(1)(B). This case is presently pending before the

Court on the parties cross-Motions for Judgment on the Pleadings (Document Nos. 10 and 11.) and

Plaintiff's Reply. (Document No. 12.) .

The Plaintiff, Christopher Bailey, (hereinafter referred to as "Claimant"), filed an application

for SSI on December 7, 2010 (protective filing date),[1] alleging disability as of June 1, 2005, due to

high blood pressure, mental problems, and back, arm, and foot problems. (Tr. at 12, 118-20, 166,

366-85.) The claim was denied initially and upon reconsideration. (Tr. at 60-61, 68-70, 74-76.) On

August 4, 2011, Claimant requested a hearing before an Administrative Law Judge (ALJ). (Tr. at 77.)

---

[1] The undersigned notes that the ALJ's decision indicates the protective filing date as
December 13, 2010. (Tr. at 12.) The Disability Report - Field Office identifies a different protective
filing date of December 7, 2010. (Tr. at 152.)

A hearing was held on August 15, 2012, before the Honorable Jack Penca. (Tr. at 387-412.)  By decision dated August 29, 2012, the ALJ determined that Claimant was not entitled to benefits. (Tr. at 12-24.) The ALJ's decision became the final decision of the Commissioner on September 17, 2013, when the Appeals Council denied Claimant's request for review. (Tr. at 5-8.) Claimant filed the present action seeking judicial review of the administrative decision on November 15, 2013, pursuant to 42 U.S.C. § 405(g). (Document No. 2.)

Under 42 U.S.C. § 423(d)(5) and § 1382c(a)(3)(H)(I), a claimant for disability benefits has the burden of proving a disability. See Blalock v. Richardson, 483 F.2d 773, 774 (4th Cir. 1972). A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable impairment which can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A).

The Social Security Regulations establish a "sequential evaluation" for the adjudication of disability claims. 20 C.F.R. §§ 404.1520, 416.920 (2012). If an individual is found "not disabled" at any step, further inquiry is unnecessary. Id. §§ 404.1520(a), 416.920(a). The first inquiry under the sequence is whether a claimant is currently engaged in substantial gainful employment. Id. §§ 404.1520(b), 416.920(b). If the claimant is not, the second inquiry is whether claimant suffers from a severe impairment. Id. §§ 404.1520(c), 416.920(c). If a severe impairment is present, the third inquiry is whether such impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4. Id. §§ 404.1520(d), 416.920(d). If it does, the claimant is found disabled and awarded benefits. Id. If it does not, the fourth inquiry is whether the claimant's impairments prevent the performance of past relevant work. 20 C.F.R. §§ 404.1520(e), 416.920(e). By satisfying inquiry four, the claimant establishes a prima facie case of disability. Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). The burden then shifts to the Commissioner, McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983), and leads to the fifth and final inquiry: whether

2

the claimant is able to perform other forms of substantial gainful activity, considering claimant's remaining physical and mental capacities and claimant's age, education and prior work experience. 20 C.F.R. §§ 404.1520(f), 416.920(f) (2012). The Commissioner must show two things: (1) that the claimant, considering claimant's age, education, work experience, skills and physical shortcomings, has the capacity to perform an alternative job, and (2) that this specific job exists in the national economy. McLamore v. Weinberger, 538 F.2d 572, 574 (4th Cir. 1976).

When a claimant alleges a mental impairment, the Social Security Administration "must follow a special technique at every level in the administrative review process." 20 C.F.R. §§ 404.1520a(a) and 416.920a(a). First, the SSA evaluates the claimant's pertinent symptoms, signs and laboratory findings to determine whether the claimant has a medically determinable mental impairment and documents its findings if the claimant is determined to have such an impairment. Second, the SSA rates and documents the degree of functional limitation resulting from the impairment according to criteria as specified in 20 C.F.R. §§ 404.1520a(c) and 416.920a(c). Those sections provide as follows:

> *(c) Rating the degree of functional limitation.* (1)Assessment of functional limitations is a complex and highly individualized process that requires us to consider multiple issues and all relevant evidence to obtain a longitudinal picture of your overall degree of functional limitation. We will consider all relevant and available clinical signs and laboratory findings, the effects of your symptoms, and how your functioning may be affected by factors including, but not limited to, chronic mental disorders, structured settings, medication and other treatment.
>
> (2) We will rate the degree of your functional limitation based on the extent to which your impairment(s) interferes with your ability to function independently, appropriately, effectively, and on a sustained basis. Thus, we will consider such factors as the quality and level of your overall functional performance, any episodic limitations, the amount of supervision or assistance you require, and the settings in which you are able to function. See 12.00C through 12.00H of the Listing of Impairments in appendix 1 to this subpart for more information about the factors we consider when we rate the degree of your functional limitation.
>
> (3) We have identified four broad functional areas in which we will rate the degree of your functional limitation: Activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation. See 12.00C of

the Listings of Impairments.

(4) When we rate the degree of limitation in the first three functional areas (activities of daily living, social functioning; and concentration, persistence, or pace), we will use the following five-point scale: None, mild, moderate, marked, and extreme. When we rate the degree of limitation in the fourth functional area (episodes of decompensation), we will use the following four-point scale: None, one or two, three, four or more. The last point on each scale represents a degree of limitation that is incompatible with the ability to do any gainful activity.

Third, after rating the degree of functional limitation from the claimant's impairment(s), the SSA determines their severity. A rating of "none" or "mild" in the first three functional areas (activities of daily living, social functioning; and concentration, persistence, or pace) and "none" in the fourth (episodes of decompensation) will yield a finding that the impairment(s) is/are not severe unless evidence indicates more than minimal limitation in the claimant's ability to do basic work activities. 20 C.F.R. §§ 404.1520a(d)(1) and 416.920a(d)(1).[2] Fourth, if the claimant's impairment(s) is/are deemed severe, the SSA compares the medical findings about the severe impairment(s) and the rating and degree and functional limitation to the criteria of the appropriate listed mental disorder to determine if the severe impairment(s) meet or are equal to a listed mental disorder. 20 C.F.R. §§ 404.1520a(d)(2) and 416.920a(d)(2). Finally, if the SSA finds that the claimant has a severe mental impairment(s) which neither meets nor equals a listed mental disorder, the SSA assesses the

_____

[2] 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.04, provides that affective disorders, including depression, will be deemed severe when (A) there is medically documented continuous or intermittent persistence of specified symptoms and (B) they result in two of the following: marked restriction of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence or pace; or repeated episodes of decompensation , each of extended duration or (C) there is a medically documented history of a chronic affective disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities with symptoms currently attenuated by medication or psychosocial support and (1) repeated extended episodes of decompensation; (2) a residual disease process resulting in such marginal adjustment that a minimal increase in mental demands or change in the environment would cause decompensation; or (3) a current history of 1 or more years' inability to function outside a highly supportive living arrangement, and the indication of a continued need for such an arrangement.

Claimant's residual functional capacity. 20 C.F.R. §§ 404.1520a(d)(3) and 416.920a(d)(3). The Regulation further specifies how the findings and conclusion reached in applying the technique must be documented at the ALJ and Appeals Council levels as follows:

> At the administrative law judge hearing and the Appeals Council levels, the written decision issued by the administrative law judge and the Appeals Council must incorporate the pertinent findings and conclusions based on the technique. The decision must show the significant history, including examination and laboratory findings, and the functional limitations that were considered in reaching a conclusion about the severity of the mental impairment(s). The decision must include a specific finding as to the degree of limitation in each of the functional areas described in paragraph (c) of this section.

20 C.F.R. §§ 404.1520a(e)(2) and 416.920a(e)(2).

In this particular case, the ALJ determined that Claimant satisfied the first inquiry because he had not engaged in substantial gainful activity since December 13, 2010, the application date. (Tr. at 14, Finding No. 1.) Under the second inquiry, the ALJ found that Claimant suffered from "osteoarthritis and bipolar disorder," which were severe impairments. (Tr. at 14, Finding No. 2.) At the third inquiry, the ALJ concluded that Claimant's impairments did not meet or equal the level of severity of any listing in Appendix 1. (Tr. at 15, Finding No. 3.) The ALJ then found that Claimant had a residual functional capacity ("RFC") to perform medium level work, as follows:

> [T]he [C]laimant has the residual functional capacity to perform medium work as defined in 20 CFR 416.967(c) except he can only occasionally climb ramps and stairs, but never ladders, ropes, or scaffolds. The [C]laimant can occasionally balance, stoop, kneel, crouch, and crawl. He must avoid concentrated exposure to extreme cold, vibration, and hazards such as moving machinery and unprotected heights. He is further limited to performing simple, routine, repetitive unskilled tasks and is prevented from engaging in tandem tasks. He can withstand only occasional changes in the work setting and can have occasional interaction with his supervisors, co-workers, and the public.

(Tr. at 17, Finding No. 4.) At step four, the ALJ found that Claimant was capable of performing his past relevant work as a packager, as actually and generally performed. (Tr. at 23, Finding No. 5.) On this basis, benefits were denied. (Tr. at 23-24, Finding No. 6.)

5

Scope of Review

      The sole issue before this Court is whether the final decision of the Commissioner denying the claim is supported by substantial evidence. In Blalock v. Richardson, substantial evidence was defined as:

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'

Blalock v. Richardson, 483 F.2d 773, 776 (4th Cir. 1972) (quoting Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966)). Additionally, the Commissioner, not the Court, is charged with resolving conflicts in the evidence. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Nevertheless, the Courts "must not abdicate their traditional functions; they cannot escape their duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974).

      A careful review of the record reveals the decision of the Commissioner is not supported by substantial evidence.

Claimant's Background

      Claimant was born on April 1, 1979, and was 33 years old at the time of the administrative hearing, August 15, 2012. (Tr. at 120, 393.) Claimant had an eighth grade education and a Generalized Equivalency Diploma and was able to communicate in English. (Tr. at 167, 394.) In the past, Claimant worked as a packager. (Tr. at 23, 167, 407.)

 The Medical Record

      The Court has reviewed all the evidence of record, including the medical evidence of record, and will discuss it below as it relates to the undersigned's findings and recommendation.

Dr. Amelia McPeak, D.O., Psychiatrist:

Dr. McPeak conducted a comprehensive psychiatric assessment on February 15, 2011, to re-establish medication management that Claimant was on in the past and continued when incarcerated. (Tr. at 217-20.) Claimant was released from jail in December 2010, and indicated that he was treated while incarcerated for a mood disorder with Lithium, Celexa, Synthroid, Amitriptyline, and Propranolol. (Tr. at 217.) Claimant reported a long history of mood symptoms with treatment having begun in July 2008. (Id.) When Claimant was a child, he was sexually molested by a female at the age of four or five, was physically abused by his older brother, lost his father at the age of 13, and experienced anger and behavioral problems in school. (Id.) He quit school during the ninth grade and later obtained his GED. (Id.) He reported that he cut himself to earn his mother's attention and that the behavior continued until he was 16 years of age, at which time it converted to tattoos. (Id.)

Claimant reported depression with symptoms including tearfulness, moodiness, irritability, snappiness, isolation, anhedonia, decreased energy, decreased memory, decreased attention and concentration, decreased sleep, early morning awakenings, and decreased appetite. (Id.) He also reported opposite mood states with very high energy that lasted one to two days in duration, characterized by inability to sleep, racing thoughts, irritability, rapid speech, likelihood of fights, and increased tattoos. (Tr. at 217-18.) Finally, Claimant indicated that he avoided sexual activity with his wife, avoided people and leaving the home, and experienced numbness of emotions. (Tr. at 218.) He noted that in the past, his anger was severe and that he had a history of breaking things, throwing things, tearing up a car, punching a wall, and fighting the neighbor and his brother which resulted in domestic battery charges. (Id.)

On mental status examination, Dr. McPeak observed that Claimant was cooperative, exhibited normal behavior and speech, and had a dysphoric and anxious mood with a constricted affect. (Tr. at 219.) He had linear, goal-directed thought processes with intact associations; he denied suicidal

7

or homicidal ideations; he had no hallucinations; his attention, concentration, and memory were intact; his fund of knowledge was average; and his insight and judgment were limited. (Id.) Dr. McPeak diagnosed bipolar disorder NOS; marijuana abuse and alcohol abuse, both in sustained full remission; intermittent explosive disorder; rule out borderline personality disorder; and assessed a GAF of 55.[3] (Id.) She opined that his prognosis was guarded due to his history of legal problems and substance abuse, but noted that Claimant appeared motivated for treatment and did not have a history of noncompliance. (Id.) She prescribed Propranolol 40mg for blood pressure and anxiety; Lithium Carbonate 300mg/600mg for depression and bipolar disorder; Celexa 20mg for depression; Synthroid 100mcg for thyroid disease; and Amitriptyline 150mg for insomnia and depression. (Id.)

Claimant attended monthly medication management appointments with Dr. McPeak from March 16, 2011, through March 14, 2012. (Tr. at 288-304, 354-65.) His mental status examinations remained essentially the same over time. (Tr. at 290, 293, 296, 299, 301, 303-04, 355, 358, 361, 364.) Dr. McPeak observed that Claimant was cooperative, had normal behavior and speech, and had a mildly irritable mood and constricted affect. (Id.) His thought process was linear and goal directed; associations, insight, and judgment were intact to fair; he denied suicidal or homicidal ideation; and there was no evidence of hallucinations. (Id.) On March 16, 2011, Claimant reported that his medications were not very effective and that he continued to have problems with low frustration tolerance and significant problems with insomnia. (Tr. at 290.) Dr. McPeak prescribed Ambien 10mg for insomnia and Trileptal 300mg to target mood instability and anger. (Id.) On April 15, 2011, Claimant noted slight improvement with Trileptal but continued to struggle with irritability and felt

---

[3]     The Global Assessment of Functioning ("GAF") Scale is used to rate overall psychological functioning on a scale of 0 to 100. A GAF of 51-60 indicates that the person has "[m]oderate symptoms . . . or moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers)." American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders* ("DSM-IV") 32 (4th ed. 1994).

sedated throughout the day. (Tr. at 292.) He reported a lot of anxiety and panic attacks. (Id.) On May 9, 2011, Dr. McPeak again changed Claimant's medications as his depression had not improved, though Claimant reported less irritability with increased Trileptal. (Tr. at 295.) On June 7, 2011, Dr. McPeak noted that Claimant recently had failed a course of Amitriptyline, Celexa, and Lexapro, and that he continued to struggle with a lot of symptoms of anhedonia, lack of motivation, and social anxiety. (Tr. at 298.) Dr. McPeak started Claimant on a trial of Effexor for depression. (Id.) Claimant reported on July 7, 2011, that he discontinued the Lithium as it was not helping him and that he had increased aggression and agitation. (Tr. at 301.) Dr. McPeak started him on a trial of Risperdal. (Id.) On August 4, 2011, Dr. McPeak noted that Claimant struggled with anger outbursts, irritability, and low frustration tolerance, and started him on Geodon instead of Risperdal. (Tr. at 303.)

On October 10, 2011, Dr. McPeak noted that Ativan helped with Claimant's anxiety. (Tr. at 363-64.) Claimant reported an overall improvement in anger and irritability, but noted that he felt out of control at times and struggled with dysphoria, lack of motivation, and social isolation. (Tr. at 364.) His Geodon was increased to 80mg. (Id.) On November 21, 2011, Dr. McPeak noted slight improvement in his anger and irritability, and that he was only minimally dysphoric, but noted a lot of continued anxiety. (Tr. at 360-61.) Dr. McPeak noted on December 20, 2011, that Claimant appeared to be at his baseline and was fairly stable, but still was unable to function in society due to his anxiety. (Tr. at 357-58.) Dr. McPeak noted that Claimant was not yet in full remission, though Claimant denied severe symptoms of depression or anhedonia. (Tr. at 357.) Claimant was continued on his medications. (Tr. at 358.) Dr. McPeak next examined Claimant on March 14, 2012, at which time he noted a worsening of symptoms of depression and low mood, anxiety, panic, hopelessness, and anhedonia without suicidal thoughts or plan to harm himself. (Tr. at 355.) Claimant reported that his wife was facing criminal shoplifting charges and he feared he would lose his home. (Id.) As a result of the situational issues, Claimant felt that the Effexor was not working, and therefore, it was

discontinued and Viibryd was started. (Id.)

On July 31, 2012, Dr. McPeak completed a form Mental Assessment of Ability to Do Work-Related Activities on which he opined that Claimant had extreme limitations in his ability to deal with the public and work stresses, relate predictably in social situations, and complete a normal work day and work week without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. (Tr. at 351-53.) She assessed marked limitations in Claimant's ability to follow work rules, deal with the public, use judgment, interact with supervisors, behave in an emotionally stable manner, and understand, remember, and carry out complex job instructions. (Id.) Moderate and slight limitations were assessed in Claimant's ability to maintain attention and concentration, behave in an emotionally stable manner, and understand, remember, and carry out detailed and simple job instructions. (Id.) Dr. McPeak opined that these limitations were due, in part, to his anxiety and desire to stay isolated and his continued struggles with depression. (Tr. at 352.) Dr. McPeak noted that Claimant had never truly functioned in a work environment due to his behavioral problems, anger, and aggression starting in childhood and incarceration. (Id.) Furthermore, his anxiety limited his ability to maintain attention and concentration (Id.)

Dr. Karl G. Hursey, Ph.D. - Psychiatric Review Technique:

On May 14, 2011, Dr. Hursey, a state agency psychologist, completed a form Psychiatric Review Technique, on which he opined that Claimant's bipolar disorder was not a severe impairment. (Tr. at 260-74.) Dr. Hursey further opined that Claimant's mental impairment resulted in no restriction of activities of daily living or episodes of decompensation of extended duration and only mild difficulties in maintaining social functioning, concentration, persistence, or pace. (Tr. at 270.) On July 1, 2011, Dr. G. David Allen, Ph.D., another state agency psychologist, reviewed the evidence in the file, and affirmed Dr. Hursey's opinion as written. (Tr. at 286-87.)

John R. Atkinson, Jr., M.A. - Psychological Examination:

On March 9, 2012, Mr. Atkinson conducted a consultative examination in connection with review of Claimant's Medicaid benefits. (Tr. at 307-13.) Claimant reported difficulty sleeping, low energy, depression, anxiety, anger problems, obsessive thoughts of hurting people, compulsive behaviors, and thoughts of hurting himself. (Tr. at 308.) He reported that he drank alcohol once a month and smoked marijuana occasionally. (Tr. at 309.) On mental status examination, Mr. Atkinson observed that Claimant was vague and distractible; complained about doctors and others rejecting him or failing to talk to him; was uneasy in his rapport; had relevant, coherent, and appropriate speech; was depressed and anxious with a broad affect; had relevant and normal stream of thought; exhibited elaborate and paranoid attitudes of distrust; denied hallucinations or illusions; had fair insight but normal judgment; had moderately impaired immediate memory and abstract reasoning skills, markedly impaired delayed memory and concentration, and mildly impaired attention; had normal psychomotor behavior; had fair to poor persistence and average pace; and had mildly impaired social functioning. (Tr. at 311-12.)

Mr. Atkinson opined that Claimant had been misdiagnosed as having a bipolar disorder, when he actually had a mood disorder associated with borderline personality associated with chronic anger state disorder, chronic depression, anxiety, and mood shifts lasting for short periods of time. (Tr. at 312.) Thus, he diagnosed Mood Disorder NOS associated with borderline personality disorder and Borderline Personality Disorder, antisocial type with underlying schizoid-obsessive features. (Tr. at 312-13.) Mr. Atkinson further assessed a GAF of 45[4] and opined that Claimant's prognosis was poor. (Tr. at 313.)

---

[4] A GAF of 41-50 indicates that the person has serious symptoms, or serious impairment in social, occupational or school functioning. American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders* ("DSM-IV") 32 (4th ed. 1994).

11

Claimant's Challenges to the Commissioner's Decision

Claimant alleges that the Commissioner's decision is not supported by substantial evidence because the ALJ failed to comply with Acquiescence Ruling ("AR") 00-1(4) when he failed to consider the findings made in the final decision by an ALJ on a prior disability claim. (Document No. 10 at 12-15.) Claimant notes that in the prior ALJ decision, the ALJ found that he suffered from myalgias, depression, anxiety, borderline personality disorder with antisocial features, posttraumatic stress disorder, and obesity, which all were severe impairments. (Id. at 13.) The ALJ then assessed an RFC for medium exertional level work with occasional climbing but never climbing ladders, ropes, or scaffolds, or exposure to unprotected heights and hazardous machinery. (Id.) Additionally, he was limited to simple, routine, repetitive, unskilled tasks with occasional work setting changes; occasional interaction with the public, co-workers, and supervisors; and an avoidance of tandem tasks with others. (Id. at 13-14.) In the most recent decision, however, the ALJ found only the two severe impairments, and noted that the other mental impairments were not diagnosed until March, 2012, and therefore, that Claimant had not been under such infirmities for a period of 12 months. (Id. at 14.) Claimant asserts that the ALJ essentially ignored the prior ALJ's decision and that the one paragraph devoted to the prior decision was false. (Id. at 14-15.) The ALJ failed to explain the apparent conflict between the two decisions regarding the discrepancy in the step two findings, as required by AR 00-1(4), and therefore, Claimant contends that remand is required.

In response, the Commissioner asserts that pursuant to AR 00-1(4), the ALJ was not bound by the finding contained in the prior denial of Claimant's disability claim because the current claim respected an unadjudicated period of time, and was, therefore, a new issue which required independent evaluation. (Document No. 11 at 9.) Contrary to Claimant's allegation that the ALJ failed to address the prior decision, the Commissioner asserts that the ALJ noted the prior decision and found new and material evidence relating to his condition. (Id.) The ALJ, therefore, declined to

12

adopt the RFC and findings of the prior decision and thereby accorded the decision only some weight. (Id. at 9-10.) The Commissioner further asserts that Claimant's argument is without merit that the ALJ erred in finding that Claimant's diagnoses of borderline personality disorder with anti-social features and posttraumatic stress disorder were non-severe impairments. (Id. at 10.) The Commissioner contends that Claimant had the burden of proof at step two of the sequential analysis and he failed to demonstrate that these conditions significantly limited his ability to perform basic work activities beyond those limitations noted in the ALJ's RFC assessment, during the relevant period of time. (Id.)  Even if it were error for the ALJ to have found these impairments non-severe at step two, the Commissioner contends that the ALJ continued to consider the combined effect of all severe and non-severe impairments, and therefore, the integrity of the ALJ's analysis was not compromised. (Id. at 11.)

In Reply, Claimant asserts that the portion of AR 00-1(4) upon which Defendant relies "in support of his position is actually a paragraph from a section that explains the [sic] how the *Albright* case (the basis for AR 00-1(4)) differs from the way SSA interpreted this issue *before the issuance of the AR 00-1(4)*." (Document No. 12 at 1.) Claimant explains that the following section of AR 00-1(4) explains how the SSA will apply the Albright decision within the Fourth Circuit and that it is from that explanation that Claimant drew his argument. (Id.) Claimant contends that at a minimum, the ALJ was required to explain why he gave less, or no weight to the prior decision. (Id. at 2.) Claimant continues to assert that the ALJ further erred in failing to address why his step two findings differed from the findings of the prior ALJ. (Id.)

Claimant also alleges that the Commissioner's decision is not supported by substantial evidence because the ALJ erred in according only limited weight to the opinion of Dr. McPeak, Claimant's treating psychologist. (Document No. 10 at 15-17.) Claimant asserts that contrary to the ALJ's decision, Dr. McPeak's treatment notes and the medical record, supported her opinions. (Id.

at 16-17.) Specifically, Claimant notes that the ALJ stated in his decision that the multiple medications were of no help and that he continued to have a constricted mood and was mildly irritable, that he was treated for his mental impairments while in prison, that Dr. McPeak diagnosed him with bipolar disorder, that despite numerous medications he continued to be psychiatrically unstable with anger outbursts, and that the ALJ gave Dr. McPeak's assessment more weight than the opinion of Mr. Atkinson. (Id.)

In response, the Commissioner asserts that the ALJ properly determined that Dr. McPeak's treatment notes were inconsistent with her assessed limitations. (Document No. 11 at 8.) The Commissioner notes that the ALJ found that Dr. McPeak's mental status examinations essentially were normal, yet she assessed contradictory unsupported extreme and marked limitations in functioning. (Id.) The Commissioner contends that as the ALJ found, Dr. McPeak's medical source statement simply is inconsistent with her objective medical findings as contained in her contemporaneous treatment notes, and therefore, her opinion is not entitled controlling weight. (Id. at 9.)

Analysis.

1. AR 00-1(4).

Claimant first alleges that the ALJ did not properly consider the prior denial of benefits as required by AR 00-1(4), and Albright v. Commissioner of Soc. Sec. Admin., 174 F.3d 473 (4th Cir. 1999)(King, Circuit Judge). (Document No. 10 at 12-15.) In Albright, the Fourth Circuit recognized that the "SSA treats a claimant's second or successive application for disability benefits as a claim apart from those earlier filed, at least to the extent that the most recent application alleges a previously unadjudicated period of disability." Within the Fourth Circuit, Acquiescence Ruling 00-1(4), 2000 WL 43774 (Jan. 12, 2000), interpreted the Albright decision

to hold that where a final decision of SSA after a hearing on a prior disability claim

> contains a finding required at a step in the sequential evaluation process for determining disability, SSA must consider such finding as evidence and give it appropriate weight in light of all relevant facts and circumstances when adjudicating a subsequent disability claim involving an unadjudicated period.

The SSA made clear that the Ruling applied only to (1) claims within the Fourth Circuit, (2) a finding of a claimant's RFC or a finding required at a step in the sequential analysis, and (3) findings made in a final decision by an ALJ or the Appeals Council on a prior disability claim. AR 00-1(4), 2000 WL 43774, *4. The SSA explained how it applies the <u>Albright</u> decision within the Fourth Circuit as follows:

> When adjudicating a subsequent disability claim arising under the same or a different title of the Act as the prior claim, an adjudicator determining whether a claimant is disabled during a previously unadjudicated period must consider such a prior finding as evidence and give it appropriate weight in light of all relevant facts and circumstances. In determining the weight to be given such a prior finding, an adjudicator will consider such factors as: (1) whether the fact on which the prior finding was based is subject to change with the passage of time, such as a fact relating to the severity of a claimant's medical condition; (2) the likelihood of such a change, considering the length of time that has elapsed between the period previously adjudicated and the period being adjudicated in the subsequent claim; and (3) the extent that evidence not considered in the final decision on the prior claim provides a basis for making a different finding with respect to the period being adjudicated in the subsequent claim.

> Where the prior finding was about a fact which is subject to change with the passage of time, such as a claimant's residual functional capacity, or that a claimant does or does not have an impairment(s) which is severe, the likelihood that such fact has changed generally increases as the interval of time between the previously adjudicated period and the period being adjudicated increases. An adjudicator should give greater weight to such a prior finding when the previously adjudicated period is close in time to the period being adjudicated in the subsequent claim, e.g., a few weeks as in *Lively*. An adjudicator generally should give less weight to such a prior finding as the proximity of the period previously adjudicated to the period being adjudicated in the subsequent claim becomes more remote, e.g., where the relevant time period exceeds three years as in *Albright*. In determining the weight to be given such a prior finding, an adjudicator must consider all relevant facts and circumstances on a case-by-case basis.

<u>Id.</u>; <u>see also</u>, <u>Gilliam v. Astrue</u>, 2010 WL 1009726, at *9-12 (S.D. W.Va.).

15

In the prior ALJ's decision, dated June 3, 2010, ALJ Thomas W. Erwin found that Claimant suffered from the severe impairments of myalgias, depression, anxiety, borderline personality disorder with anti-social features, PTSD, polysubstance abuse, and obesity. (Tr. at 45.) He assessed an RFC of medium exertional level work, with occasional balancing and an avoidance of climbing ladders, ropes, or scaffolds; unprotected heights; and hazardous machinery. (Tr. at 47.) He was limited markedly in his ability to maintain attention and concentration; limited to simple, routine, repetitive, unskilled tasks with only occasional changes in the work setting; he was limited to occasional interaction with the public, co-workers, and supervisors; and he was unable to perform tandem tasks with others. (Id.) In the current ALJ's decision, dated August 29, 2012, the ALJ acknowledged that his decision reflected an unadjudicated period since the application date, December 7, 2010, and found that there was new and material evidence relating to Claimant's condition. (Tr. at 23.) The ALJ specifically noted that Claimant's drug and alcohol abuse no longer was a significant and material factor in the determination of his disability as his polysubstance abuse had improved. (Id.) Therefore, the ALJ found that Claimant's severe impairments, osteoarthritis and bipolar disorder, could be considered without the interference of such abuse. (Id.) The ALJ concluded that these impairments resulted in limitations on Claimant's ability to perform basic work activities, and therefore, the ALJ declined to adopt the prior ALJ's RFC and accorded his sequential findings only some weight pursuant to AR 00-1(4). (Id.)

Though the ALJ did not find Claimant's mood disorder, anxiety disorder, and borderline personality disorder as severe impairments, as did the ALJ in the prior decision, the ALJ found that the evidence during the relevant period failed to support such a finding because Claimant was not diagnosed with the conditions until March 2012, by Mr. Atkinson. (Tr. at 15.) Consequently, Claimant had not suffered from these conditions for a period of twelve months and was unable to

16

meet the requirements of a severe impairment. (Id.) Similarly, the ALJ found that the record during the relevant period failed to support a diagnosis of PTSD and demonstrated that Claimant's depression and anxiety were well controlled or produced no significant symptoms. (Id.)

Though the ALJ acknowledged new and material evidence that demonstrated Claimant's polysubstance abuse remission, he failed to acknowledge that the prior ALJ conducted an assessment with and without Claimant's polysubstance abuse. The ALJ assessed an RFC with the polysubstance abuse, as stated above. However, the ALJ further found that if Claimant ceased the polysubstance abuse, his other severe impairments would remain, as they were not affected by the abuse and his RFC would remain the same with the exception that he no longer was limited markedly in his ability to maintain attention and concentration. (Tr. at 49-50.) The ALJ failed to acknowledge the prior ALJ's polysubstance abuse analyses. Rather, he simply found new evidence in the form of Claimant's remission and did not explain how the new evidence differed from the prior ALJ's analysis. Furthermore, respecting the ALJ's step two finding, the ALJ found that Claimant was not diagnosed with many of the mental impairments until March 2012. The ALJ failed to acknowledge that although Dr. McPeak did not diagnose specifically anxiety, insomnia, and depression, she prescribed medications for these impairments and continued to reference and treat the conditions throughout Claimant's treatment with her. In December 2011, Dr. McPeak opined that Claimant continued to remain unstable to function due to anxiety. Surely, Dr. McPeak considered such condition as a mental impairment.

Although AR 00-1(4) does not state that the ALJ must explicitly indicate his explanation, the Ruling does provide that the ALJ shall consider and weigh the prior ruling as evidence in reaching his decision in the second claim. The ALJ must provide some semblance of an explanation to enable judicial review of his decision. Accordingly, the undersigned finds that although the ALJ

acknowledged AR 00-1(4), in his decision, he did not explain adequately how he considered and weighed the prior decision, especially regarding the RFC assessment and step two findings. For these reasons, the undersigned recommends that the matter be remanded for further consideration.

2. Opinion Evidence.

Claimant further alleges that the ALJ erred in assessing the opinion of his treating psychiatrist, Dr. McPeak. (Document No. 10 at 15-17.)  Every medical opinion received by the ALJ must be considered in accordance with the factors set forth in 20 C.F.R. §§ 404.1527(d) and 416.927(d) (2011). These factors include: (1) length of the treatment relationship and frequency of evaluation, (2) nature and extent of the treatment relationship, (3) supportability, (4) consistency, (5) specialization, and (6) various other factors. Additionally, the Regulations state that the Commissioner "will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion." Id. §§ 404.1527(d)(2) and 416.927(d)(2).

Under §§ 404.1527(d)(1) and 416.927(d)(1), more weight is given to an examiner than to a non-examiner. Sections 404.1527(d)(2) and 416.927(d)(2) provide that more weight will be given to treating sources than to examining sources (and, of course, than to non-examining sources). Sections 404.1527(d)(2)(i) and 416.927(d)(2)(i) state that the longer a treating source treats a claimant, the more weight the source's opinion will be given. Under §§ 404.1527(d)(2)(ii) and 416.927(d)(2)(ii), the more knowledge a treating source has about a claimant's impairment, the more weight will be given to the source's opinion. Sections 404.1527(d)(3), (4) and (5) and 416.927(d)(3), (4), and (5) add the factors of supportability (the more evidence, especially medical signs and laboratory findings, in support of an opinion, the more weight will be given), consistency (the more consistent an opinion is with the evidence as a whole, the more weight will be given), and specialization (more weight given to an opinion by a specialist about issues in his/her area of

18

specialty). Unless the ALJ gives controlling weight to a treating source's opinion, the ALJ must explain in the decision the weight given to the opinions of state agency medical or psychological consultants. 20 C.F.R. §§ 404.1527(f)(2)(ii) and 416.927(f)(2)(ii) (2012). The ALJ, however, is not bound by any findings made by state agency medical or psychological consultants and the ultimate determination of disability is reserved to the ALJ. Id. §§ 404.1527(f)(2)(i) and 416.927(f)(2)(i).

In evaluating the opinions of treating sources, the Commissioner generally must give more weight to the opinion of a treating physician because the physician is often most able to provide "a detailed, longitudinal picture" of a claimant's alleged disability. See 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2) (2012). Nevertheless, a treating physician's opinion is afforded "controlling weight only if two conditions are met: (1) that it is supported by clinical and laboratory diagnostic techniques and (2) that it is not inconsistent with other substantial evidence." Ward v. Chater, 924 F. Supp. 53, 55 (W.D. Va. 1996); see also, 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2) (2012). The opinion of a treating physician must be weighed against the record as a whole when determining eligibility for benefits.  20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2) (2012). Ultimately, it is the responsibility of the Commissioner, not the court to review the case, make findings of fact, and resolve conflicts of evidence. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). As noted above, however, the Court must not abdicate its duty to scrutinize the record as a whole to determine whether the Commissioner's conclusions are rational. Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974).

If the ALJ determines that a treating physician's opinion should not be afforded controlling weight, the ALJ must then analyze and weigh all the evidence of record, taking into account the factors listed in 20 C.F.R. §§ 404.1527 and 416.927(d)(2)-(6).

In his decision, the ALJ found that Dr. McPeak's extreme and marked limitations in mental functioning were inconsistent with her treatment notes which reflected that Claimant consistently

presented on mental status examinations with a cooperative attitude, had normal behavior and speech, had linear and goal-directed thought processes, had intact associations, had a dysphoric and anxious mood, denied suicidal or homicidal ideations, and had intact attention and concentration. (Tr. at 22.) He acknowledged Claimant's reports that the numerous medications failed to provide any relief and that he continued to have a constricted mood and he was mildly irritable. (Tr. at 20.) Nevertheless, the ALJ determined that Claimant's subjective complaints were unsupported by Dr. McPeak's office notes. (Id.) The ALJ noted Claimant's reports that he remained psychiatrically unstable with anger outbursts, anxiety, and inattention. (Tr. at 21.) But he continued to acknowledge Dr. McPeak's essentially normal mental status exam findings and noted that although she found that he was anxious, she failed to diagnose generalized anxiety disorder. (Id.)

Dr. McPeak consistently noted that Claimant continued to struggle with anxiety, irritability, and anger issues. (Tr. at 292, 303, 355, 360-61. 363-64.) Despite having not diagnosed anxiety, Dr. McPeak assessed on December 20, 2011, that Claimant had reached his "baseline" and was "fairly stable" but was "still unable to function in society due to his anxiety." (Tr. at 358.) This statement leads to the logical conclusion, based on the language "still unable to function," that Dr. McPeak had been of the opinion prior to December 20, 2011, that Claimant was unable to function due to his anxiety. Thus, in having reviewed Dr. McPeak's treatment records, it appears that the ALJ placed great reliance on her mental status findings, which appear mostly routine in nature and he failed to rely on the substance of her treatment notes, which was contained more within her assessment sections and sometimes within Claimant's subjective sections. Having reviewed Dr. McPeak's treatment notes in their totality, the undersigned finds that the ALJ erred in rejecting her opinions for the reason that they were inconsistent with her treatment notes. Dr. McPeak assessed extreme and marked limitations in areas such as dealing with work stresses, completing work weeks without

interruptions, performing at a consistent pace, dealing with the public, using judgment, interacting with supervisors, and behaving in an emotionally stable manner. (Tr. at 351-53.) Limitations in these functional areas could be consistent with symptoms of anxiety and anger to the extent alleged herein. For these reasons, the undersigned finds that remand is required for further consideration of Dr. McPeak's treatment records and opinions.

For the reasons set forth above, it is hereby respectfully **PROPOSED** that the District Court confirm and accept the foregoing findings and **RECOMMENDED** that the District Court **GRANT** the Plaintiff's Motion for Judgment on the Pleadings (Document No. 10.), **DENY** the Defendant's Motion for Judgment on the Pleadings (Document No. 11.), **REVERSE** the final decision of the Commissioner, **REMAND** this matter for further proceedings consistent with this Proposed Findings and Recommendation pursuant to the fourth sentence of 42 U.S.C. § 405(g), and **DISMISS** this matter from the Court's docket..

The parties are notified that this Proposed Findings and Recommendation is hereby **FILED**, and a copy will be submitted to the Honorable Thomas E. Johnston, United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have three days (mailing/service) and then fourteen days (filing of objections) from the date of filing this Proposed Findings and Recommendation within which to file with the Clerk of this Court, specific written objections, identifying the portions of the Proposed Findings and Recommendation to which objection is made, and the basis of such objection. Extension of this time period may be granted for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of de novo review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. Snyder v.

Ridenour, 889 F.2d 1363, 1366 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 155, 106 S.Ct. 466,

475, 88 L.Ed.2d 435 (1985), reh'g denied, 474 U.S. 1111, 106 S.Ct. 899, 88 L.Ed.2d 933 (1986);

Wright v. Collins, 766 F.2d 841, 846 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91, 94 (4th

Cir.), cert. denied, 467 U.S. 1208, 104 S.Ct. 2395, 81 L.Ed.2d 352 (1984). Copies of such objections

shall be served on opposing parties, District Judge Johnston, and this Magistrate Judge.

 The Clerk is directed to file this Proposed Findings and Recommendation and to send a copy

of the same to counsel of record.

 Date: January 30, 2015.

R. Clarke VanDervort
United States Magistrate Judge

22